IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-00908-WYD-CBS

GLORIA HUIZAR,

      Plaintiff,

v.

LEPRINO FOODS,

      Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant Leprino Foods' Motion for Summary Judgment (ECF No. 59), filed July 6, 2010.  The claims in this case relate to Plaintiff Gloria Huizar's ("Plaintiff" or "Huizar") employment with Leprino Foods ("Leprino") and her subsequent termination from employment.  Plaintiff asserts claims of sexual harassment and retaliation under federal law.  Plaintiff also brings a state law claim of discrimination under the Colorado Anti-Discrimination Act.

Huizar's claims relate to the alleged sexual harassment perpetrated by her supervisor, Ruben Estrada ("Estrada").  She asserts that this harassment occurred during her employment with Leprino as a member of the night cleaning crew.  Estrada was dismissed as a Defendant from this case by Order of September 11, 2009, pursuant to a motion to dismiss filed by Huizar.

## II.    FACTUAL BACKGROUND

I first note that I have stated only those facts which I deem pertinent to my ruling. I have, however, construed all of the facts in the light most favorable to Plaintiff as I must for purposes of this summary judgment motion. *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

### A.    Huizar's Actions Against Leprino

It is undisputed that on February 28, 2007, Huizar filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").  In her EEOC Charge, Huizar alleged that she was sexually harassed by her supervisor, Estrada, on July 6, 2006 when he unbuttoned Huizar's pants and put his hand down the front of her pants while she was entering the women's restroom.  Huizar further claimed that following this incident, Estrada made sexual remarks to her.  On July 9, 2009, after receiving a "Right to Sue" letter from the EEOC, Huizar filed the instant action in this Court.

Huizar's Amended Complaint alleges "upon information and belief" that Estrada was a "supervisor" for Leprino.  (Am. Compl. ¶ 14, ECF No. 7.)  Huizar further alleges that because of Estrada's position as her supervisor, Leprino discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) ("Title VII").  Huizar further claims that Leprino took adverse employment actions against her in retaliation for her "opposing practices made unlawful by Title VII." (Am. Compl. ¶ 12, ECF No. 7.)  Huizar finally alleges a claim under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402.

B.    Huizar's Employment at Leprino

Leprino is a Colorado corporation with its principal place of business located in Denver, Colorado.  Huizar began her employment at Leprino in December 2005 as a member of the night cleaning crew.  Huizar was initially hired on a part-time basis, however, in March 2006, her employment became full-time.  Huizar continued to work in this position until her termination in December 2006.  Huizar's typical hours were from 5:30 p.m. until 1:00 a.m. Monday night through Friday night.

When Huizar was hired in December 2005, Leprino gave her a copy of the Leprino Foods Company Employee Handbook.  At that time, Huizar executed an "Acknowledgment of Understanding" reflecting her receipt of the Handbook.  The Handbook included provisions relating to the prohibition of sexual harassment and instructions to employees on what to do if they felt they had been sexually harassed. The sexual harassment policy stated in pertinent part:

> 0.1.1 Policy
> Sexual harassment, a form of sexual discrimination, is illegal, contrary to policy, and strictly prohibited.
>
> All employees are expected to conduct themselves in a professional and businesslike manner at all times. Inappropriate sexual conduct that could lead to a claim of sexual harassment is expressly prohibited by this policy. Such conduct includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.
>
> 0.1.2 Response to Complaints
> If you believe there has been a violation of any of our policies, including the sexual harassment policy, please contact your local Human Resources Representative or Plant Manager, Director of Employee Relations, or Vice-President of Human Resources. The Company prohibits retaliation against any employee for filing a complaint under this policy, or for assisting in a complaint investigation.

       0.1.4 <u>Procedures/Responsibilities</u>
       Any alleged violation should be reported to the employee's supervisor,
       manager, department head, or division head. Alternatively, alleged
       violations may be reported to the employee's local Human Resources
       Supervisor or Manager, the Director of Employee Relations, or the
       Vice-President of Human Resources.

(Mot. Summ. J. 3-4, ECF No. 59.)

In 2005 and 2006, Mike Falbo was the Administrative Services Manager at Leprino. He has been employed at Leprino for approximately 18 years. As Administrative Services Manager, Falbo manages the Office Services Team and Building Maintenance. In 2006, Falbo had approximately 21 employees working in his department. In his affidavit, Falbo stated that the Facility Maintenance Supervisor was one of those 21 employees who reported to him. For the first part of 2006, Jeff Dey was the Facility Maintenance Supervisor. In November 2006, Dey was replaced by Ron Villarosa.[1] Falbo stated that the Facility Maintenance Supervisor was responsible for supervising the night cleaning crew.

Typically, Falbo and the Facility Maintenance Supervisor worked during the day at Leprino, thus, neither were normally present when the night cleaning crew workers were performing their duties. Because of this, a Lead Night Crew Custodian was appointed.[2] In 2006, Estrada was the Lead Night Crew Custodian. The Lead Night Crew Custodian's job duties included cleaning and carrying out special projects. The

---

[1] Neither Dey nor Villarosa is currently employed at Leprino.

[2] The Lead Night Crew Custodian was sometimes referred to as the "Team Leader" or "Night Lead."

parties dispute whether Estrada had supervisory authority over Huizar or any other Leprino personnel.  Huizar stated that as the Lead Night Crew Custodian, Estrada was the highest ranking member of the night shift and would report the performance of the night cleaning crew to Falbo.

On July 1, 2006, Huizar suffered an on-the-job injury.  As a result, Huizar was placed on light-duty status for several weeks.  The parties further dispute whether Estrada was involved in the decision to allow Huizar to go on light-duty status.  In her affidavit, Huizar stated that Estrada notified her that he could decrease her workload on the night crew in exchange for sexual favors.  Falbo stated that Estrada was not involved in this decision.

In November 2006, Falbo received reports that Huizar was entering the men's locker room at Leprino, which was contrary to company policy.  Huizar stated in her affidavit that she was instructed by Estrada to restock the towels in the women's locker room by entering the men's locker room, which was where the towels were stored.  On November 29, 2006, Falbo was advised that Huizar had again entered the men's locker room.  As a result, Falbo and Villarosa held a meeting with the night cleaning crew, including Huizar.  At the meeting, Falbo and Villarosa again advised the cleaning crew that they were prohibited from entering the opposite sex's locker room, and that there would be "zero tolerance" for a breach of this policy.  Huizar, however, stated that she does not recall ever being reprimanded for retrieving towels from the storage closet located in the men's locker room.

On December 14, 2006, Falbo was advised that Huizar had entered the men's

locker room the previous night. Falbo stated that he and Villarosa met with Huizar and placed her on suspension that same day. On December 16, 2006, Leprino officials notified Huizar that her employment was being terminated.

III.   ANALYSIS

A.   Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "When applying this standard, [the court must] view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. (internal quotation omitted).

B.   Whether Summary Judgment is Proper on Huizar's Claim of Sexual Harassment - Hostile Work Environment - Under Title VII

Under Title VII, there are two types of actionable sexual harassment: hostile work environment and quid pro quo. "Quid pro quo harassment occurs when tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and adverse job consequences result from the employee's refusal to submit to the

conduct." *Hicks v. Gates Rubber Co*, 833 F.2d 1406, 1414 (10th Cir. 1987).  Hostile

work environment harassment arises "when the harassing conduct is sufficiently severe

or pervasive to alter the conditions [of the victim's] employment and create an abusive

working environment." *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir.

2001) (internal citation omitted).  Here, Huizar asserts a hostile work environment claim

against Leprino.

Employers may be liable for hostile work environment sexual harassment either

vicariously or in negligence.  Relevant to this case, if a supervisor carries out the

harassment, the employer can be held vicariously liable.  "An employer is subject to

vicarious liability to a victimized employee for an actionable hostile environment created

by a supervisor with immediate (or successively higher) authority over the employee."

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

In the pending motion, Leprino argues that Estrada is not a "supervisor" for

purposes of Title VII, precluding vicarious liability.  Turning to my analysis of whether

Leprino can be held vicariously liable for Estrada's actions, I first determine whether

Estrada was Huizar's supervisor.

Currently, there is a split of authority on the issue of who is considered a

"supervisor" for purposes of claims brought under Title VII.  On one hand, courts

including the Seventh Circuit have adopted a bright line rule that only employees who

possess the power to hire, fire or directly affect the terms and conditions of their victims

are considered supervisors. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 356 (7th Cir.

2002); *Rhodes v. Illinois Dep't of Treasury*, 359 F.3d 498 (7th Cir. 2004).  On the other

hand, however, courts including the Second Circuit have adopted a broader approach in determining whether employees are deemed supervisors under Title VII.  *See Mach v. Otis Elevator Co.*, 326 F.3d 116, 123-127 (2d Cir. 2003).  Under this approach, along with the employee's ability to hire, fire and discipline the victim, courts consider factors including an employee's ability to affect the victim's daily work activities.  *Id.* at 127. Here, Leprino urges me to follow the Seventh Circuit and find that Estrada was not Huizar's supervisor because he lacked the power to fire, hire or discipline her.

I could not find any Tenth Circuit authority directly adopting either afore-mentioned approach for determining whether an employee can be considered a supervisor.  However, the Tenth Circuit has held that an employer can be held vicariously liable for the actions of both an employee who is given apparent authority and for harassment by a supervisor abusing delegated powers.  *See Harrison v. Eddy Potash*, 158 F.3d 1371, 1374-76 (10th Cir. 1998).  The Tenth Circuit has also held that an employer is not liable when there is no evidence that an employee, with some authority over a subordinate employee, ever invoked that authority in order to facilitate harassment of the subordinate.  *See Hirschfield v. New Mexico Corrections Dep't*, 916 F.2d 572, 579 (10th Cir. 1990).

Based on my review of this authority, I believe the Tenth Circuit would adopt the broader approach in determining whether an employee can be considered a supervisor for Title VII purposes.  Both *Harrison* and *Hirschfield* suggest that the Tenth Circuit has examined: (1) situations where an employee has the power to hire, fire or discipline a victim and (2) situations where an employer has granted an employee some authority

over subordinate employees who misuses that power to harass.  If the Tenth Circuit preferred the stricter approach adopted by the Seventh Circuit—where only employees with the power to hire, fire and discipline are supervisors—it would be unnecessary for the Tenth Circuit to analyze cases such as *Harrison* and *Hirschfield* where an employee, alleged with harassment, was acting with apparent authority.

Accordingly, turning to the case at hand, in determining whether Estrada was a supervisor, I will employ the broader approach and address whether Leprino granted Estrada any authority and whether he used that authority to harass Huizar.  First, it is undisputed that Estrada was referred to as the "Team Leader" or "Night Lead."  During the night cleaning crew's shifts, Estrada was the highest ranking employee present. Estrada oversaw the night cleaning crew workers and reported to both Falbo and the Facility Maintenance Supervisor.  Thus, Estrada was the only employee who could provide input to Falbo and the Facility Maintenance Supervisor about Huizar's work performance.  Huizar also stated that Estrada would direct her to restock towels, thus, further evidencing his role of overseeing the night cleaning crew's activities.

Based on my review of the evidence, I find that a reasonable person could conclude that Leprino had granted Estrada authority over the night cleaning crew employees.  Moreover, there is evidence that Estrada directly misused his authority to further his alleged sexual harassment of Huizar.  Huizar stated that Estrada informed her that he would decrease her workload (following her injuries) in exchange for her having sexual intercourse with him.  Huizar also stated that Estrada frequently propositioned her for sex.  Accordingly, I find that Huizar has shown a genuine issue of

material fact related to this issue, thus, summary judgment is not appropriate as to whether Estrada was a supervisor pursuant to Title VII.  Leprino's motion for summary judgment is denied as to Plaintiff's sexual harassment claim asserted under Title VII.

      C.    Whether Summary Judgment is Proper on Huizar's Claim of Retaliation

Huizar also claims that Leprino is liable for retaliating against her when she complained about Estrada's alleged harassment.  Leprino, however, argues that the retaliation claim fails because Huizar was fired for a legitimate, nondiscriminatory business reason—Huizar's failure to comply with Leprino's policies and procedures.

When a plaintiff relies on circumstantial evidence in support of a retaliation claim, it is subject to the three-step *McDonnell Douglas* burden shifting analysis.  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008).   To establish a prima facie case of retaliation, a plaintiff must demonstrate that a genuine issue of fact exists as to each of the following elements*:* "(1) [s]he engaged in protected opposition to discrimination; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."  *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001); *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1202 (10th Cir. 2006).  After a plaintiff makes a prima facie showing, a defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  Plaintiff must respond by demonstrating a defendant's asserted reasons for the adverse action are pretextual.  *Id.*  "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action."  *Haynes v. Level Three*

*Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (internal quotation omitted).

In her Amended Complaint, Huizar alleges that Leprino terminated her employment in retaliation for her complaints about Estrada's alleged harassment. According to Leprino's sexual harassment policy, executed by Huizar, "any alleged violation should be reported to the employee's supervisor, manager, department head, or division head.  Alternatively, alleged violations may be reported to the employee's local Human Resources Supervisor or Manager, the Director of Employee Relations, or the Vice-President of Human Resources."  (Mot. Summ. J. 3-4, ECF No. 59.)  However, Leprino puts forth undisputed evidence that at the time Huizar's employment was terminated in December 2006, the Leprino management had no knowledge of any complaints of harassment made by Huizar, which is contrary to the sexual harassment policy.

Specifically, neither Anell Ewing, Leprino's Human Resources Manager, nor Mike Falbo, Leprino's Administrative Services Manager, was aware of any complaint by Huizar that she was being harassed by Estrada.  In fact, Ewing stated in her affidavit that "[n]either Plaintiff nor anyone on her behalf has ever reported the alleged harassment to me."  (Mot. Summ. J., Ewing Aff. Ex. A-4 at 3, ECF. No. 59.)  Falbo stated in his affidavit that "at the time Plaintiff's employment was terminated on December 18, 2006, I was unaware of any complaint from Plaintiff that Mr. Estrada had harassed her."  (Mot. Summ. J., Falbo Aff. Ex. A-2 at 5, ECF. No. 59.)

Huizar fails to rebut Leprino's evidence or offer any independent evidence

-11-

supporting her claim that Leprino terminated her employment in retaliation for her complaints about harassment.  Thus, there is no evidence that Leprino knew of the alleged harassment before it terminated Huizar's employment.  Since Leprino was unaware of any of Huizar's complaints about Estrada's alleged harassment prior to the termination of Huizar's employment, Leprino's action could not have been retaliatory. Huizar has failed to offer any direct or circumstantial evidence to establish a prima facie case of retaliation or even create a genuine issue of material fact.  Therefore, I find that Leprino's motion for summary judgment is granted as to Huizar's retaliation claim, and Leprino is entitled to judgment as a matter of law on this claim.

> D.   Whether Summary Judgment is Proper on Huizar's Discrimination Claim Pursuant to State Law

In addition to the two federal claims discussed above, Huizar asserts a claim under the Colorado Ant-Discrimination Act for unlawful discrimination in violation of Colo. Rev. Stat. § 24-34-402.  The Colorado Supreme Court has adopted the *McDonnell Douglas* and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) framework for analyzing such claims.  Thus, the law and analysis set forth in the previous section of this Order also applies to Huizar's state law discrimination claim. Accordingly, as previously stated, because Huizar has failed to offer any direct or circumstantial evidence to establish a prima facie case of discrimination or even create a genuine issue of material fact, I find that Leprino is entitled to judgment as a matter of law on Huizar's state law discrimination claim.  Leprino's motion for summary judgment is granted as to this claim.

IV.     CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant Leprino Foods' Motion for Summary Judgment (ECF No. 59) is **GRANTED IN PART AND DENIED IN PART.**  The motion is denied to the extent that it requests summary judgment on Huizar's claim of sexual harassment under Title VII.  The motion is granted to the extent that it seeks summary judgment on both Huizar's retaliation claim and her state law discrimination claim.  Judgment shall be entered in favor of Leprino on the retaliation claim and the state law discrimination claim.

Dated:  March 18, 2011

                              BY THE COURT:


                              s/ Wiley Y. Daniel
                              Wiley Y. Daniel
                              Chief United States District Judge